# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Christopher Basile, | Case No. 2:19-cv-00429-JAD-BNW |
| Plaintiff, | |
| v. | **ORDER** |
| Kirsten Novak, | |
| Defendants. | |

Before the Court is plaintiff Christopher Basile's motion to compel deposition testimony of Debra R. Schoenberg, 30(b)(6) designee of Schoenberg Family Law Group, P.C. ("SFLG") (ECF No. 53). Basile's motion takes aim at defendant Kirsten Novak's ability to invoke the attorney-client privilege. Basile argues that during Novak's deposition, Novak waived the privilege by placing at issue SFLG's state of mind and its authority to send communications to third parties regarding the sale of certain real property. He further claims that Novak expressly waived the privilege when she forwarded an email to her husband that contained privileged information.

This Court finds that Novak's deposition testimony is insufficient to constitute waiver because it does not, as required by California law, implicate the content or substance of her communications with SFLG. Further, this Court finds that although Novak did indeed effect an express waiver when she forwarded the email to her husband, the scope of this waiver is much narrower than Basile claims. Thus, Basile's motion will be granted in part and denied in part.

**I.      Background.**

**A.  Relevant factual allegations.**

The dispute relevant to the underlying motion centers around the failed August 2017 sale of the Stirling Club (the "Club"). The Club—located here in Las Vegas, Nevada—was owned by

JDLB Mansion, LLC, which, in turn, was wholly owned by JDLB, LLC ("JDLB"). (ECF No. 47 at 2; ECF No. 53 at 2.) Basile and his brother, Donald Basile ("DGB"), were JDLB's only members. (ECF No. 47 at 2.)

In January 2017, JDLB Mansion signed a purchase and sale agreement with non-party Global Bancorp Commodities and Investments, Inc. ("Global"). (ECF No. 53 at 2.) The agreement provided that Global would acquire the Club for $15 million. (*Id.*) Novak purportedly gathered information about the Club's sale by stealing documents from DGB (ECF No. 47 at 4.) The purchase was scheduled to close on August 31, 2017. (*Id.* at 3.)

On August 11, 2017, Novak, through her attorneys at SFLG, filed to dissolve her marriage from DGB in California state court. (ECF No. 53 at 2.) According to Basile, section 2040 of the California Family Code contains an automatic stay provision that allows a non-consenting spouse to preclude the sale of certain marital assets (the "Automatic Stay"). (ECF No. 47 at 4.) Novak was supposedly cognizant that because the Club was a commercial property owned by an LLC, its sale was not subject to the Automatic Stay. (*Id.* at 4.) Basile alleges that Novak disrupted the Club's sale by directing SFLG to send correspondence to Global to convey that the Automatic Stay prohibited the Club's sale without Novak's consent (the "Global Letter"). (*Id.*)

The Club's sale to Global fell through. Global apparently informed DGB that it would not close on the Club's sale because, based on SFLG's correspondence, it was uncertain whether it could obtain clear title. (*Id.*) Shortly after Global cancelled the sale, Novak "promptly" dismissed the California divorce action and moved to Utah. (*Id.*)

**B. Procedural history.**

Basile filed the operative complaint in December 2019 and invoked the Court's federal question jurisdiction. (ECF No. 47.) Basile pled three claims for relief: (1) intentional interference with contractual relationships; (2) intentional interference with prospective economic advantage; and (3) abuse of process. (*Id.*) The operative scheduling order provides that discovery in this matter closed on March 18, 2020. (ECF No. 33 at 3.)

1. **Novak's and SFLG's depositions.**

Basile deposed Novak on September 20, 2019. (ECF No. 53 at 11.) Basile argues in his motion that Novak "put[] the issue of attorney-client privilege at the center of this case" when during her deposition she alleged that the Global Letter was sent without her authorization. (*Id.* at 10:27–11:4.) To support this argument, Basile points to a nearly eight-page, uninterrupted excerpt of Novak's deposition. (*Id.* at 11–18.)

Basile then sought to depose SFLG in California. (*Id.* at 3.) SFLG's deposition did not occur because the parties and SFLG disagreed about the applicability or waiver of the attorney-client privilege between Novak and SFLG. (*Id.* at 5.) Thus, Basile filed the underlying motion on January 29, 2020. (*Id.*) Novak and SFLG filed timely responses, and Basile filed timely replies. (ECF Nos. 56, 59, 60, and 61).

Basile brought his motion under Rule 37 and styled it as a motion "to compel deposition testimony of Debra R. Schoenberg," as Rule 30(b)(6) designee of SFLG. (ECF No. 53 at 1.) SFLG, however, is a nonparty. SFLG's nonparty status raised two concerns for this Court.

First, the Ninth Circuit has made clear that "[a] Rule 37 order is directed at the party," which, here, would be Novak only. *See Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1222–23, 1224 (9th Cir. 2018). This Court, therefore, asked the parties to address whether Basile's motion should have been brought under Rule 45 instead of Rule 37. (ECF No. 65.)

Second, setting aside the distinction between Rule 37 and Rule 45, each of those rules provides guidance as to *where* a litigant must file a motion to compel. Thus, the Court also ordered that the parties address whether the Court lacked jurisdiction to resolve the underlying motion given that Basile filed the motion with this Court rather than the federal district court embracing the location where SFLG's deposition is to take place. (*Id.*)

Basile and Novak each filed supplemental briefing on March 9, 2020. (ECF Nos. 66 and 67.) The underlying motion came on for hearing on March 12, 2020. The Court made no rulings but advised the parties that an order would follow.

## II. Discussion.[1]

### A. Basile's motion was properly brought under Rule 37.

To interpret the Federal Rules of Civil Procedure, the Court begins with the rules' text. *Sali*, 884 F.3d at 1221–22. The ability to take a deposition derives from Rule 30. Subject to restrictions not relevant here, a party may "depose any person, including a party, without leave of court[.]" FED. R. CIV. P. 30(a)(1).

Rule 30 works in tandem with Rule 26 to set the scope of permissible questioning during a deposition. To that end, a party can depose "any person"—including a nonparty—"regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 30(a)(1); 26(b)(1). In the context of the deposition of a nonparty, if there is a disagreement between the deposing party and the nonparty deponent about the permissible scope of questioning, either one can file a motion with the court for relief. *See, e.g.*, FED. R. CIV. P. 45(d)(3). If it is the deposing party who moves, that party must choose whether to move under Rule 37, Rule 45, or both.

Rule 37 enables a litigant to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). An order under Rule 37 "is directed at the party" and it compels the party "to use its best efforts to secure the nonparty's attendance at the deposition." *Sali*, 884 F.3d at 1224.

In contrast, a subpoena under Rule 45 "is directed at the nonparty [deponent]." *Id.* Curiously, Rule 45's text speaks only in the defensive context of quashing or modifying subpoenas, rather than in the offensive context of compelling compliance with subpoenas. *See* FED. R. CIV. P. 45(d)(1) (explaining that the court must enforce a party's duty to "take reasonable steps to avoid imposing undue burden or expense" on a deponent); FED. R. CIV. P. 45(d)(2)(3) (explaining that the court "must quash or modify a subpoena" upon a showing that the subpoena falls into one of four impermissible categories). Still, courts construe Rule 45 to govern motions to compel, too. *See, e.g.*, *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n.5 (9th Cir. 1983) ("Once the

---

[1] As a preliminary matter, this Court notes that the parties' PDF filings with the Court are not searchable. This is a violation of the Local Rules, which provide that "[d]ocuments filed electronically must be filed in a **searchable**" PDF format. LR IA 10-1(b). All future filings must comply with the Local Rules.

person subpoenaed objects to the subpoena . . . the party seeking discovery must obtain a court order directing compliance.").

Here, Basile argues that Rule 37(a)(3)(A) is an appropriate vehicle for his motion because it is within Novak's control to allow SFLG to comply with the properly issued subpoena. (ECF No. 66 at 4.) Basile concedes that "it may have been more appropriate or wise . . . to bring the motion pursuant to Rule 45" but that SFLG consents to have the underlying motion heard by this Court and agrees to be bound by this Court's decision. (*Id.* at 5, 6–7.)

Novak asserts that Basile's motion should have been brought under Rule 45. She claims that she has not impeded SFLG's deposition in any way. (ECF No. 67 at 4.) Therefore, she argues, a motion to compel under Rule 37 is inapplicable to the underlying discovery dispute. (*Id.*)

This Court finds that, under *Sali v. Regional Med. Ctr.*, it can resolve the underlying motion under Rule 37 for the limited purpose of determining whether Novak may invoke the attorney-client privilege at SFLG's deposition. *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218 (9th Cir. 2018). In, *Sali*, the Ninth Circuit upheld two orders: one commanding plaintiffs to produce their nonparty expert witness for a deposition, and a second order imposing Rule 37(b)(2)(A) sanctions against plaintiffs for their failure to do so. *Id.* at 1225. The plaintiffs argued that the order compelling them to produce their witness "defie[d] common sense" because they had "no legal relationship with [the witness] that would enable them to compel [the witness] to attend a deposition against his will." *Id.* at 1223–24.

The Court rejected plaintiffs' argument because, in part, the order imposing sanctions was consistent with the "general discovery enforcement provisions" in other subsections of Rule 37. *Id.* at 1220. For example, Rule 37(b)(2)(B) authorizes the imposition of sanctions if a party "fails to comply with an order under Rule 35(a) requiring it to produce another person for [physical or mental] examination." *Id.* at 1223 (alteration in original). Similarly, the Ninth Circuit previously recognized in dictum that Rule 37(a)(5)'s provision for sanctions applies to "motions to compel nonparties to attend depositions." *Id.* With these enforcement provisions in mind, the *Sali* Court held that the district court could, consistent with Rule 37(b)(2)(A), order a party to produce a nonparty expert witness at a deposition. *Id.* at 1220.

Here, this Court agrees with Basile that it is within Novak's control to allow SFLG to comply with the subpoena; therefore, his motion is proper under Rule 37(a)(3)(A). The central issue here is Novak's invocation of the attorney-client privilege. Basile styled his motion as one to compel SFLG's deposition testimony but, in substance, Basile, Novak, and SFLG ask this Court to resolve the privilege's applicability to the questions that Basile hopes to ask at SFLG's deposition.

The parties and SFLG agree that California law governs this dispute.[2] And under California law, the attorney-client privilege can be invoked by the lawyer or client. CALIF. EVID. CODE § 954(c). Ultimately, however, the client can preclude the lawyer from invoking the privilege because it is the client who "holds [the] privilege" and the lawyer merely invokes it on her behalf. *Roberts v. City of Palmdale*, 853 P.2d 496, 500 (Cal. 1993) (citing CALIF. EVID. CODE § 954); *see also D.I. Chadbourne, Inc. v. Superior Ct. of City and Cnty. of San Francisco*, 388 P.2d 700, 707 (Cal. 1964) ("it is the client, and not the attorney, who may claim the privilege[.]")

It is uncontested that Novak was SFLG's client. Thus, it is she who controls the privilege and she may prevent SFLG from invoking it in on her behalf. Further, SFLG has already agreed to sit for the deposition. Therefore, in the context of this dispute, Novak exercises a degree of control over SFLG that is even greater than the control that the *Sali* plaintiffs had over their expert. Novak's attorney-client privilege is the only roadblock preventing the parties from moving forward with the deposition and advancing beyond the discovery stage. Thus, pursuant to *Sali*, this Court can, subject to some restrictions, resolve Basile's motion under Rule 37.

### B. The scope of this Court's order.

Basile's decision to move solely under Rule 37 necessarily limits the permissible scope of this Court's order. Under Rule 37 a motion "for an order to a party must be made in the court where the action is pending," but a motion "for an order to a nonparty must be made in the court where discovery is or will be taken." FED. R. CIV. P. 37(a)(2). Therefore, to be clear: this Court is

---

[2] This Court sits in diversity, so it must apply Nevada's choice-of-law rules. *See Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966 (9th Cir. 1993). Under Nevada's choice-of-law rules, California has the most significant relationship to the issue of whether Novak can invoke the attorney-client privilege. *See General Motors Corp. v. Eighth Jud. Dist. Ct. ex rel Cnty. of Clark*, 134 P.3d 111, 111 (Nev. 2006) (establishing the "most significant relationship" test from the Restatement (Second) of Conflict of Laws as Nevada's choice-of-law rule).

resolving the issue of whether Novak can invoke the attorney-client privilege or whether she has waived it. This Court is not, and cannot, command SFLG to sit for deposition and answer Basile's questions because that would be "an order to a nonparty." To obtain this kind of order, Basile would have to file a motion in the Northern District of California, which is the federal district court that embraces the location where SFLG's deposition "will be taken." *See id.*[3] The Court turns now to the merits of the underlying motion.

### C. The attorney-client privilege.

The attorney-client privilege "is the oldest of the privileges" and "has been a hallmark of Anglo-American jurisprudence for almost 400 years." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981); *Mitchell v. Superior Ct.*, 691 P.2d 642, 645 (Cal. 1984). Its fundamental purpose is "to promote full and open discussion of the facts and tactics surrounding individual legal matters" by "safeguard[ing] the confidential relationship between clients and their attorneys." *Mitchell*, 691 P.2d at 646. Although the privilege can, and often does, suppress relevant evidence, California's legislature determined that this concern was "outweighed by the importance of preserving confidentiality in the attorney-client relationship." *Costco Wholesale Corp. v. Superior Ct.*, 219 P.3d 736, 740–41 (Cal. 2009). In general, then, disclosure may not be ordered even when there exist concerns of "relevance, necessity, or [other] particular circumstances peculiar to [a] case." *Id.* (citation omitted).

California's attorney-client privilege is codified by statute. The statute provides clients the "privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer[.]" CALIF. EVID. CODE § 954. The privilege applies "to communications [made] in the course of professional employment that are intended to be confidential." *Roberts v. City of Palmdale*, 853 P.2d 496, 499–500 (Cal. 1993). Notably, the privilege itself "is absolute," but the right to assert it "is not." *Costco Wholesale*, 219 P.3d at 732 (citation and quotation omitted); *Chicago Title Ins. Co. v. Superior Ct.*, 220 Cal. Rptr. 507, 512 (Cal. Ct. App. 1985).

---

[3] Basile concedes that SFLG's deposition must take place in California. (ECF No. 53 at 21.)

California recognizes both express and implied waiver of the attorney-client privilege. *So. Cal. Gas Co. v. Publ. Utilities Com.*, 784 P.2d 1373, 1377, 1382 (Cal. 1990). The express waiver is governed by statute, but the implied waiver is not. *Id.* Under either iteration, the party who resists the privilege has the burden of establishing waiver. *Venture Law Grp. v. Superior Ct.*, 12 Cal. Rptr. 3d 656, 660 (Cal. Ct. App. 2004).

### 1. Implied waiver.

Basile asserts that Novak waived the attorney-client privilege by placing "the decisions, conclusions, and mental state of SFLG" at the center of this case in her deposition. (ECF No. 61 at 9–10.) According to Basile, Novak said in her deposition that SFLG sent the Global Letter without her authorization. Based on Basile's understanding of Novak's testimony, Basile argues that Novak is using the attorney-client privilege as both a sword and a shield.

Novak, in response, argues that she did not waive the attorney-client privilege during her deposition. She asserts that during her deposition she testified about facts and did not reveal the content of her communications with SFLG. Novak claims that her deposition testimony reveals only that she hired SFLG to do "what is necessary" in a divorce proceeding. Further, Novak asserts that the details of how she and SFLG learned about the Club's sale and whether Novak authorized SFLG to send the Global letter are irrelevant and "not an issue." SFLG is aligned with Novak and argues that Novak did not impliedly waive the privilege because she did not take an affirmative step to place her attorney's state of mind directly at issue.

The implied waiver exists when "the client has put [an] otherwise privileged communication directly at issue," making disclosure of the privileged communication "essential for a fair adjudication of the action." *So. Cal. Gas Co.*, 784 P.2d at 1377. There is no waiver unless the client puts at issue the "substance" and "content" of the protected communication. *Mitchell v. Superior Ct.*, 691 P.2d 642, 651 (Cal. 1984).

Here, this Court finds that Basile has not met his burden of establishing that there exists an implied waiver of the attorney-client privilege as it relates to Novak's deposition. To begin, this Court takes issue with Basile's characterization of Novak's testimony. According to Basile's motion, Novak testified that SFLG "did not have her authority to send any communications to

third parties related to the [Club's sale]." (ECF No. 53 at 18.) But at oral argument, Basile's counsel took the position that, based on Novak's "cumulative testimony," Novak "never" gave an answer "related to the authority to send the [Global Letter]."[4] These positions are inconsistent with one another, but that is somewhat unsurprising because the deposition transcript and Novak's responses are not a model of clarity.

Turning to the deposition itself, Novak was asked point blank: "So it's your testimony today that this letter was sent without your authority?" (ECF No. 53 at 12.) Novak responded—after an exchange between the parties' counsel—that she did not see a copy of the Global Letter until she was deposed for her Utah divorce from DGB and—after another exchange—"in answer to your question, I had contacted attorneys in California to . . . file for divorce and proceed with steps that are . . . appropriate in filing for a divorce action in California in my particular situation[.]" (ECF No. 53 at 12–13.) Based on this Court's reading, Novak testified that although she did not see the Global Letter until her divorce deposition in Utah, she had authorized SFLG to take whatever steps were necessary in moving forward with her divorce petition.[5] More broadly, the deposition testimony as a whole is insufficient to show that Novak placed at issue the substance or content of her communications with SFLG.

A client puts at issue the substance of her communications with her counsel when she "would rely heavily" upon evidence to be given by her counsel and "would be using [her] prior counsel" to prove matters that counsel could only have learned "in the course of employment." *Merritt v. Superior Ct.*, 88 Cal. Rptr. 337, 342 (Cal. Ct. App. 1970). For example, in *Merritt*, the plaintiff was an assignee of an insured's cause of action against the defendant insurance company for bad-faith refusal to settle within policy limits. *Id.* at 338. Plaintiff argued that defense

---

[4] Oral argument at 24:20–24:40.

[5] As SFLG points out in its opposition, certain portions of Novak's deposition "may be relevant to show whether Novak **expressly**"—as opposed to impliedly—"instructed her attorneys at [SFLG] to send the [Global Letter], but this is notably distinct from a blanket statement that Novak did not authorize [SFLG] to send the letter." (ECF No. 59 at 11–12.) This observation is relevant because when Novak was asked whether SFLG sent the Global Letter "without authority," Novak sought to clarify the definition of "authority." She testified: "if you are defining 'authorized' to have reviewed and agreed to and communicated that back in terms of reviewing this letter and having seen it and agreeing with it, my answer is no." (ECF No. 53 at 100.) This specific definition of "authorize" appears to be the definition that Novak relied upon during her deposition.

counsel made it impossible to settle within the policy limits because defense counsel made conflicting statements that caused plaintiff's counsel to become confused. *Id.* at 338. Defense counsel sought discovery that invaded the attorney-client privilege and argued that plaintiff had impliedly waived the privilege by placing at issue "the conduct and state of mind of his personal injury counsel in failing to propose a settlement." *Id.* at 338. The Court agreed and found that it was "obvious" plaintiff intended to prosecute his claim by reference to his counsel's mental state and therefore held that plaintiff impliedly waived the privilege. *Id.* at 342.

Here, however, Basile has not established—at this juncture—that Novak intends to "rely heavily" on evidence given by SFLG or to use SFLG to establish matters that SFLG learned only in the course of employment. Rather, Novak testified that she authorized SFLG to take certain actions in furtherance of her divorce. This is insufficient to constitute waiver. To be sure, invading the privilege could verify the accuracy of Novak's testimony, but California courts have held that "[t]he privilege is not to be set aside" merely because a party seeks to verify "its adversary's position." *Transamerica Title Ins. Co. v. Superior Ct.*, 188 Cal. App. 3d 1047, 1053 (Cal. Ct. App. 1987).

Basile certainly placed Novak's state of mind at issue when he alleged in his operative complaint that Novak "instructed her attorneys to interfere with the sale of the Club" and that the Global Letter was sent "at [Novak's] direction." (ECF No. 47 at 3–4.) However, as indicated by the Court in *Miller v. Superior Ct.*, placing Novak's state of mind at issue does not put her counsel's state of mind at issue, too. In *Miller*, plaintiff alleged in a malpractice action that defendant's negligent representation during plaintiff's divorce resulted in the undervaluation of community property. *Miller v. Superior Ct.*, 168 Cal. Rptr. 589, 589 (Cal Ct. App. 1980). In discovery, plaintiff disclosed that she consulted with seven attorneys in the six years prior to bringing her malpractice claim. *Id.* at 590. Defendant sought to discover the content of plaintiff's communications with those attorneys in hopes of establishing that plaintiff learned of the existence of her claim outside the limitations period. *Id.* at 589.

The Court agreed that the statute of limitations defense put plaintiff's state of mind at issue. *Id.* at 591. However, the mere fact that her state of mind was at issue did not "cause a

waiver of her privilege concerning confidential communications between her and attorneys she consulted[.]" *Id.* Therefore, the Court held that plaintiff had not put the attorney communications at issue by merely revealing that she had consulted with counsel. *Id.*

Like in *Miller*, the revelation that Novak consulted with SFLG and authorized them to take steps in furtherance of her divorce does not create an implied waiver. By eliciting this testimony from Novak, Basile has arguably acquired evidence that goes to Novak's state of mind. However, Novak's testimony did not—under either *Merritt*, *Miller* or any of the authorities cited by Basile—place at issue the content or substance of her communications with SFLG.[6]

### 2. Express wavier.

The attorney-client privilege is expressly waived "if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone." CALIF. EVID. CODE § 912(a). Similar to the implied waiver, a client does not statutorily waive the privilege unless she reveals "a significant part" of the "substance or content" of those discussions. *Mitchell v. Superior Ct.*, 691 P.2d 642, 647–48 (Cal. 1984). Testimony revealing that a client consulted with an attorney, without revealing the content or substance of those consultations, does not effect a privilege. *People v. Perry*, 499 P.2d 129, 145–46 (Cal. 1972), *overruled on other grounds by People v. Green*, 609 P.2d 468 (Cal. 1980).[7]

#### i. Novak's deposition.

This Court finds that Novak did not expressly waive her privilege during her deposition. Novak did not, as required by *Mitchell*, reveal "a significant part" of the "substance or content" of her communications with SFLG. She testified only that she had authorized SFLG to do what was necessary to move forward with her California divorce. This response is not "wide enough in

---

[6] At oral argument, and in his briefing, Basile referenced a non-disclosure agreement ("NDA") that Novak relied upon during her deposition. (ECF No. 53 at 18.) This Court finds that Novak's reliance on the NDA is likewise insufficient to put at issue Novak's communications with SFLG or SFLG's state of mind.

[7] Although *Perry* involved the psychotherapist-patient privilege instead of the attorney-client privilege, *Perry* is applicable to this matter because express waiver of both privileges derives from the same provision of California law. *See* CALIF. EVID. CODE § 912(a) (discussing express waiver of the lawyer-client and psychotherapist-patient privileges).

scope" nor "deep enough in substance" to constitute a significant part of the communication. *See Travelers Ins. Companies v. Superior Ct.*, 191 Cal. Rptr. 871, 876 (Cal. Ct. App. 1983).

### ii. Novak's email.

Basile filed a supplement to his motion[8] wherein he argues that Novak waived her privilege when she sent DGB an email that contained privileged communications between her and SFLG (the "email"). (ECF No. 62 at 3.)[9] Novak argues that due to the then-pending California divorce proceeding, she needed DGB's permission before she could move to Utah with her children. (ECF No. 63 at 1.) DGB would not allow Novak to relocate to Utah unless she dismissed the California divorce proceeding. (*Id.*) Novak claims that she is afraid of DGB because he "has a short fuse" and is "very abusive." (*Id.* at 2.) Thus, Novak forwarded the email from SFLG to DGB to prove that the proceeding was being dismissed, but she did not intend to waive the attorney-client privilege. (*Id.*)

---

[8] The Court notes that Basile filed his supplement without first seeking this Court's leave to do so. Thus, the supplement is unauthorized under the Local Rules. LR 7-2(g) ("A party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause. The judge may strike supplemental filings made without leave of court."). However, Novak responded to Basile's supplement on the merits and did not raise the unauthorized filing issue. (ECF No. 63.) Nor did Novak raise the issue at oral argument. Therefore, this Court considers this procedural argument waived and will, in the interests of justice, address the supplement on the merits. *See* LR IA 1-4.

[9] The relevant portion of the email reads as follows:

Dear Kirsten,

This is to confirm our telephone conversations of yesterday and this morning wherein we discussed the issues of your moving with your children to Utah today and the dismissal of your dissolution action here in California.

In our telephone conversations, I informed you that pursuant to the Automatic Restraining Order in your dissolution action, before you can remove your children from the State of California, you must first obtain written consent from your husband to remove your children from the state. Failure to do so would be a violation of the Court Ordered Automatic Restraining Orders and could result in a Court Order that you immediately return the children to California and other sanctions against you for being in contempt of the Court's automatic restraining orders. Therefore, I am reiterating to you that you must obtain written permission from your husband to remove the children from California before you remove them from the State.

Regarding the dismissal of your dissolution action, I informed you that should you do so, the Automatic Restraining Orders forbidding your husband to sell any assets including real property without first obtaining your consent will no longer be in effect. Once the restraining orders are no longer in effect, your husband could sell assets and real properties without first getting your consent to do so.

Let me know the status of your getting your husband's written consent to move the children to Utah, as well as your decision regarding the dismissal of your dissolution action as soon as possible.

(ECF No. 62 at 9.)

This Court finds that Novak's email did effect an explicit waiver of the attorney-client privilege. (ECF No. 53 at 3.) This Court will first address whether the email disclosed a significant part of the content or substance of a protected communication before turning to whether Novak had the requisite intent for an express waiver.

This Court finds that Novak disclosed a "significant part" of the content or substance of the topics discussed in the email. What constitutes a "significant part of the communication" is a matter of judicial interpretation. *Fish v. Superior Ct.*, 255 Cal. Rptr. 3d 786, 792 (Cal. Ct. App. 2019). Here, the email consists almost entirely of protected information. In the email, SFLG advises Novak about what steps she must take to legally move out of California with her children and how dismissal of the California divorce will impact the restraining orders in place. This, in this Court's view, is a significant part of the content or substance of Novak's communication with SFLG as it relates to those topics.

Turning to intent, the disclosure contemplated by the express waiver provision "involves some measure of choice and deliberation of the privilege holder." *McDermott Will & Emery LLP v. Superior Ct.*, 217 Cal. Rptr. 3d 47, 64 (Cal. Ct. App. 2017) (citation omitted). Express waiver occurs "only when there is an intention to voluntarily relinquish a known right." *Id.* To assess intent, the privilege holder's characterization is "an important consideration" but it is not dispositive. *Id.* The Court must also examine any manifestation of the holder's intent. *Id.* Other relevant considerations include the precautions that the holder took to maintain the privilege and the promptness with which the holder sought return of the inadvertently disclosed document. *Id.*

Here, Basile has established that Novak voluntarily intended to relinquish a known right. Beginning with Novak's characterization of her subjective intent, Novak submits in her affidavit that she did not intend to waive the privilege, that she sent the email to prove to DGB that the request for dismissal of the divorce petition had been filed, and that she did not intend to send the string of emails containing the privileged information. Thus, Novak's characterization weighs against a finding of intent.

The remaining considerations, however, weigh in favor of intent. Basile argued at the hearing that Novak certainly intended to transmit the email to DGB and that this intent weighs in

favor of waiver. This Court agrees. In *McDermott Will & Emery LLP*, the Court held that substantial evidence supported a finding that plaintiff did not waive the attorney-client privilege by forwarding a confidential email from his smartphone to his sister-in-law instead of to the intended recipient. *McDermott Will & Emery LLP*, 217 Cal. Rptr. at 56. The evidence showed that plaintiff's transmission of the email message to his sister-in-law was a mistake, that plaintiff had no reason to transmit the email to his sister-in-law, and that plaintiff never spoke to the intended recipient about the email. *Id.* at 66. Here, in contrast, Novak intended to transmit the email to DGB, she had a reason for sending it to DGB, and she and DGB were in active discussion about at least some of the email's content (i.e., the dismissal of the divorce). This Court has credited to Novak her subjective characterization, but her purposeful transmission to DGB weighs in favor of intent.

Further, it is unclear what, if any, precautions Novak took to prevent disclosure of the privileged information in the first place. Novak emphasizes that the email chain was included in error and that her resistance to Basile's motion demonstrates her intent to protect the privilege. However, this does not bear on whether Novak took precautions to prevent the disclosure of the privileged information to DGB in the first place.

The final consideration—the promptness with which the holder sought return of the inadvertently disclosed document—is largely inapplicable here, given it was Basile who disclosed the email in discovery. Because Novak did not inadvertently disclose it in discovery, she, arguably, could not have asked for its "return." To the extent that she could have asked Basile to "return" it by asking him to not rely on it in this litigation, this Court finds that Novak's prompt opposition to Basile's supplement weighs against finding intent. Still, on balance, the factors weighing in favor of intent outweigh the factors weighing against. Thus, the email is an express waiver.[10]

---

[10] Novak's response to Basile's supplement relies almost entirely on FED. R. EVID. 502—which is inapplicable to this matter—and an unpublished decision construing that rule. (ECF No. 63.) Thus, Novak did not address California's requirement that an express waiver be made without coercion. *See* CALIF. EVID. CODE § 912(a). Novak did relay that she fears Basile because of his temper and abusive demeanor. (ECF No. 63 at 1–2.) However, this Court finds that these allegations are insufficient to establish coercion under § 912(a).

### iii. The scope of Novak's waiver.

Basile contends, both in his motion and at oral argument, that the crux of his case is the restraining order itself and whether Novak authorized that order. (ECF No. 62 at 3; Oral Argument at 37:00–38:45.) Basile argues that the email's contents "relate" to these topics. (ECF No. 62 at 3.)

The scope of a waiver, whether express or implied, must be "narrowly defined," and the information required to be disclosed "must fit strictly within the confines of the waiver." *Transamerica Title Ins. Co. v. Superior Ct.*, 233 Cal. Rptr. 825, 828 (Cal. Ct. App. 1987); *see also Employers Ins. Of Wausau v. California Water Serv. Co.*, No. C-06-3002 PVT, 2007 WL 2947423, at *4 n.3 ("California law jealously guards the attorney-client privilege and interprets all waivers narrowly."). The waiver's scope is determined "primarily by reference to the purpose of the privilege." *Id.*

Here, this Court finds that the scope of Novak's waiver does not encompass—as Basile argues in his motion—the entirety of SFLG's communications with Novak and, more specifically, does not encompass whether Novak authorized SFLG to send the Global Letter. Instead, the waiver encompasses the narrow category of communications between SFLG and Novak regarding how the dismissal of the California divorce impacted the enforceability of the restraining orders in place; on this topic, Novak has waived the attorney-client privilege.

This Court reaches this conclusion for two reasons. First, it is apparent to this Court that Novak sought the advice in the email because she desired to move to Utah with her minor children and wanted to know how dismissal impacted her circumstances and obligations. SFLG's email is tailored to this advice. It warns that a dismissal would dissolve the Automatic Stay and enable DGB to sell marital assets without Novak's permission. However, the warning does not relate to the Club specifically and instead refers more generally to "any assets, including real property." Thus, the email does not implicate the scope of SFLG's authority to send the Global Letter.

Second, this narrow waiver comports with the purpose of the attorney-client privilege. The purpose of the privilege is to foster open discussion of the facts and tactics surrounding individual legal matters by protecting the confidential relationship between clients and their attorneys.

*Mitchell v. Superior Ct.*, 691 P.2d 642, 646 (Cal. 1984). By forwarding the email to DGB, Novak ceded her privacy interest in the communications therein, but not more broadly.

In *Garcia v. Progressive Choice Ins. Co.*, the defendant insurer voluntarily disclosed "a large amount of communications it had with [its counsel] regarding [plaintiff's] claim." *Garcia v. Progressive Choice Ins. Co.*, No. 11-CV-466-BEN (NLS), 2012 WL 3113172, at *7 (S.D. Cal. July 30, 2012) (interpreting California law). The voluntary disclosure meant that the purpose of the privilege was lost, but the Court explained that it was lost "with respect to communications . . . concerning plaintiff's claim." *Id.* This narrow waiver, the Court found, was "tailored to the purpose of the privilege."

Here, likewise, the narrow waiver is consistent with the privilege's purpose because it accounts for the destruction of Novak's privacy interest in communications with SFLG about how the dismissal of the California divorce impacted the enforceability of the restraining orders in place. This Court declines Basile's invitation to find a waiver as to whether Novak authorized the order or as to the restraining order itself. Such a broad waiver is incongruous with the narrow discussion taking place in the email. Further, finding a broader waiver would not foster open discussion about the facts and tactics surrounding individual legal matters and nor would it safeguard the confidential relationship between clients and their counsel.

**III. Conclusion.**

IT IS THEREFORE ORDERED that Plaintiff's motion to compel (ECF No. 53) is GRANTED in part and DENIED in part. Novak has waived the attorney-client privilege over communications with SFLG regarding how the dismissal of the California divorce impacted the enforceability of the restraining orders in place.

DATED: March 26, 2020.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE